The next case for argument is 21-1154 Selgene Corporation v. Mylan Pharmaceuticals. The next case for argument is 21-1154 Selgene Corporation v. Mylan Pharmaceuticals. Good morning, Ms. Thompson, before you begin, how do you pronounce your first name? Elodie, like a melody without the M. Interesting. OK, thank you, please proceed. May it please the court, Elodie Thompson, Quinn Emanuel, Irk Hardin-Sullivan, on behalf of Appellant Celgene Corporation. I'd like to start with the dismissal of Milan N.V. The complaint against Milan N.V. should be reinstated because the district court wrongly failed to accept the allegations in the complaint as true. Can we just go to the complaint? Can you point to me the specific allegations that support that Milan N.V. participated in the filing of this ANDA? The allegations in the complaint, if I could point the court to page 120 of the appendix, is that Milan N.V. acted in concert with MPI and Milan Inc. in relation to regulatory approvals. OK, sorry, I was getting there. Where on this page, which number? It's paragraph 23. OK, but this is a very general statement. It doesn't say anything about whether they worked with them on this ANDA. Why is this enough that they generally might work with them to meet the Twombly standard that they participated with them on this ANDA? Isn't that what's required? Well, first, that's not required at the pleading stage in this instance, because that information would not have been known at the time the complaint was filed. Exactly what Milan N.V.'s role was with respect to this ANDA would be discerned in discovery. It wouldn't have necessarily been known at the time the complaint was filed, at which point you didn't know exactly who filed it. But you didn't even say that you had a good faith belief that they worked with them on this ANDA. I mean, you can't just guess, right? You can't just say, well, these are a bunch of interrelated companies. We're going to guess that maybe they worked with them here. Well, it's not a guess that Milan N.V. worked with them. It's that the way the business model is, these are the entities that set the business strategy and secure the regulatory approval. Is this what you've got in terms of the complaint? Anything else? The other allegations relate to Milan N.V. directing the conduct of the subsidiaries MPI and Milan Inc. In this case? Or generally? Again, no, Your Honor, not in this case in relation to ANDA generally. But if this court has any concern about whether the allegations here meet the pleading standard, of course, the correct result would be to reverse and remand to allow for amendment of the complaint to add those allegations. Well, but the district court denied you that, right? What's their standard review on that? The standard review is for abuse of discretion. However, under Third Circuit law, the reasons that the district court relied upon are an abuse of discretion because what the district court relied upon was the passage of time. Well, didn't the district court also rely on the fact that you had agreed that you would be bound by the venue issues with the other two people, the other two entities as well? That's not what the district court cited in anything related to the 2019 action here, nor, frankly, in relation to the consolidated action. The district court just said, here we are three years after the complaint has been filed. But venue has hotly been contested, right? And you didn't notice how to amend? Venue has been contested, but this relates to Milan N.V. as to which venue is indisputably proper. And the district court in the decision related to the 2017 motion to dismiss for failure to state a claim in the consolidated action didn't reach the question of whether there was a failure to plead sufficient allegations as to Milan N.V. So the timing issue, which is what the district court relied upon, is really as a result of the venue discovery taking so long. It took two years, and then there you are at the end of the venue discovery period considering a Rule 12b6 motion three years after the consolidated action was filed and a year and a half after the 2019 action was filed. During this venue discovery, did you do any discovery into whether N.V. actively participated or did anything that would have caused venue against it to be involved here? There was, in opposition to the motion to dismiss filed in the consolidated action, a proposed amended complaint that was filed. That's at appendix pages 20, 30 to 2893. That includes additional allegations as to Milan N.V.'s role. And so certainly when there has been no opportunity to amend a complaint, then an opportunity should be given to amend to meet the pleading standard. In addition, the request for leave to amend was before the expiration of the time at which amendment would be permitted for the 2019 action. But the reality is this was all started because instead of saying in 2017, as to Milan N.V., that doesn't relate to venue, you know, dismissed without prejudice, you may amend the complaint, the district court instead said it's denied as moot. So the timing issues really are a result of what happened in the district court and not addressing it until 2020. But I don't think the court actually needs to reach that question because all the court needs to do is look at the decision in Valiant in which there were almost identical allegations and the court reversed and remanded as to the dismissal of the foreign entity there. There were, similarly as to here, all three entities were... Well, in that case, we had to remand it. The district court had never considered that issue in Valiant. Whereas here, the district court considered the issue and rejected the amendment and we're reviewing it under an abuse of discretion. So I don't think you can walk away from Valiant and say that sort of compels or even suggests what we should do in this context. Certainly. Well, as to the abuse of discretion standard, that does apply to the denial of leave to amend. And we think under circuit law, there was a clear abuse of discretion. And in Valiant, as I'm recalling, there had never been any consideration of the other issue. And that's why we remanded it. The district court had not ruled on anything related to that issue, correct? Correct. There had been no ruling on the Rule 12b-6 motion in that case from the district court, which, of course, this court reviews de novo. But in looking at the allegations in Valiant, and certainly there are other cases cited in other district courts where there are identical allegations and there was a claim that was stated. And so even if this court says, no, you must do more at that point in time when you don't know who did what in relation to the ANDA, there should at least be an opportunity for leave to amend because Celgene had no reason to think that its allegations would be insufficient given the prior holdings. And I think that this court's decision in Valiant certainly supports that. Speaking of Valiant, I mean, you don't try to... Are you, with respect to the other entities, are you conceiving that you lose under Valiant? You don't seem to talk. You seem to try to make a distinction with Valiant in this case, but I'm not getting what the distinction is. Yes, Your Honor. If the court is referring to distinguishing Valiant on whether an act of infringement has occurred in the district, there certainly is a very big distinguishing factor, which is the Paragraph 4 certification that was sent to Celgene in New Jersey. In Valiant, the entities that sued, the plaintiffs, were located in Ireland, Japan, and Delaware, but the lawsuit was brought in New Jersey. That's not the case here where Celgene is located in New Jersey, which means that the Paragraph 4 certification, notice of which must be provided to the MDA holder and the patent holder, had to be sent to Celgene in New Jersey. So that's a clear distinguishing factor between Valiant and what happened here. I'm just saying, even though all the and of preparation and everything like that took place in West Virginia, let's just assume that's true. I don't know if you can speak to that or not. Just sending notice that's required to the company in another state where, let's assume Milan has no cases at all, is enough to establish a venue in the patentee's home district? It's enough to indicate that an act of infringement has occurred in that district, and that's because under the and of framework, the submission must include proof, not only that the notice of the Paragraph 4 certification was sent to Celgene in New Jersey, but that it was received by Celgene in New Jersey. Why is it that the submission of the and of under the statute necessarily includes the act of sending the notice letter to the patent owner? My understanding of the statute and the regulations is submission of an and of including the certification is completely separate from and a precursor to the ultimate transmission of the notification letter to the patent owner. Is there something in the statute or the regs that shows me that the transmission of the notification letter is a necessary act and component of submitting an and of to the FDA? Yes, and it is that the and of application has to be amended to include proof that Celgene was notified in New Jersey. I understand that there's a rule that talks about amending the and of, but still there's the act of submission. The use of submit, submitting, submission throughout the statute and regs seems to be contemplating a particular thing that is a precursor to the notification letter itself. You have to do a certification. A certification is a promise. Included in that is a promise that you will send a notification letter, but certification doesn't include proof that you actually did send the notification letter, as I understand, the requirements for certification, Paragraph 4 certification. Am I right about that? My understanding is that under 21 CFR 314.95e, there has to be an amendment filed with the and of application as part of the submission. Not only that the Paragraph 4 notice letter was received by Celgene, but it requires supplementation with proof of delivery, essentially. I guess what I'm wondering is why isn't it that submission is different from amendment? You prepare your and of, you submit your and of, including the certification, and then after you submit the and of, you send a notification letter to the patent owner, and then you give the FDA proof of sending that notification letter through an amendment, but that's separate and apart from the actual submission itself. I think the court, looking at the structure of both the statute and the regulations, can see all the parts that must be in the and of submission. For it to be an act of infringement, it has to include the Paragraph 4 certification. For the 45-day clock to trigger for the filing of that infringement suit, there has to be notice provided to the patent holder, the NDA filer, and an amendment to that and of submission with proof that that notice has been received. To trigger the window for the patent owner to file a lawsuit, not only do you have to receive the notification letter, but the NDA applicant also has to amend the NDA application? The 45 days triggers from when the notice was received, but the FDA has to receive proof as part of the NDA submission that the applicant complied with the requirements. That's because under the statute, the act of submitting is only infringing if it includes a Paragraph 4 certification and the 45-day clock for triggering the infringement action is related back to when the notice was sent. Do you have anything other than that one regulation that calls for amending the NDA that includes proof of documentation that you sent the notification letter that, in your view, requires us to understand a submission, quote-unquote, of an NDA to necessarily include proof of providing notice to the patent owner? The statute itself requires that the notice be sent, so it's the statute and the regulation. I understand that, but that doesn't necessarily mean that it's part of the submission. Well, the submission, again, if it has to be filed with the FDA, then it is submitted, and if the court is looking at a temporal aspect of it, then the FDA will require additional information in connection with an NDA as a general matter, and it's necessary for the FDA to consider the NDA to have all of the required materials filed. So there's nothing that says there's only one day on which the submission is complete. Of course, if there are amendments to the submission that must be filed with the FDA, that necessarily includes them within a submission. Submit is not contrary to what Mylon has argued. But isn't it all still being submitted from West Virginia? The fact that it's sent out and then ultimately received somewhere else doesn't somehow broaden where the submission is occurring, which is what we in NDA cases consider as the act of infringement. Otherwise, I guess you're saying Congress somehow implicitly amended the venue statute in NDA cases to allow claims to be made in the patentee's home district, even if the generic manufacturer and producer had no connection whatsoever to that? No, Your Honor. That would be inconsistent with general patent rules, wouldn't it? Certainly it is unique, and it is unique in terms of patent venue, because really the infringement that you're looking for... It's the same venue statute, though, right? It's not a different venue statute. We have argued that Section 1391 could apply for NDA actions. That's assuming we don't buy into that. Assuming that the court doesn't buy into that argument. Yes, it is the same venue statute, and while the patent venue statute must be narrowly construed, the Hatch-Waxman Act does not need to be narrowly construed. If you look back at Valiant, there is a footnote where the court acknowledges we're not purporting to resolve every single possible question about what's in the preparation of submission, but the case does say, in Hatch-Waxman cases, venue is proper only in those districts that are sufficiently related to the NDA submission, and those districts where acts occurred that would suffice to categorize those taking them as a submitter under 271E. So I guess I'm having the same problem that it appears Judge Chen is having, establishing the connection between what you're saying is part and parcel of the submission of the NDA. I'm just not seeing it. So you want to try again? Sure. So the reason that the Paragraph 4 certification and notice provided to the patent holder and the NDA filer, which in this case is Celgene, is part of the NDA submission, is because without that Paragraph 4 certification, there is no infringement, and without notice provided to the patent holder, the NDA filer, the clock doesn't start for the infringement action. That notice provided to the patent holder says, here are the patents that are implicated. Here are the reasons why they're invalid or not infringed. And that is what triggers the filing of infringement. What the court said, our court said, was in those districts where acts occurred that would suffice to categorize those taking them as a submitter under 271E. Do you think that makes them a submitter? Well, in this instance, MPI sent the certification, the notice letter to Celgene in New Jersey. And so it's an act directed at New Jersey that MPI took in relation to the NDA submission. And that makes Celgene a submitter? No, Your Honor. It doesn't make Celgene a submitter, but it's an action that the submitter took, Mylan generally here, directed at New Jersey. And we do have this argument, the imparted material argument, which indicates that when a venue statute says, we look to where an act has been committed or has occurred, we look to where it's directed, where its effects will be felt. And there's no question here, because we know the infringement action is directed at Celgene, or the infringement is directed at Celgene in New Jersey, because for the Orange Book patents, they're required to list who the patent holder is, the NDA filer, and the address at which the representative can be contacted to provide the Paragraph 4 notification. So you're not saying that the Celgene was the submitter? No, Your Honor. Okay. We're way out of time. So we'll restore some rebuttal, and let's hear from the other side. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. The District Court in this case issued a detailed 43-page opinion, dismissing all three entities at issue in this case, two for lack of venue and one for failure to state a claim. That detailed opinion set forth precisely the evidence of record regarding venue and the pleading allegations regarding failure to state a claim that warrant dismissal. That decision should be affirmed. To start with the first question that I heard from Your Honor, regarding what specifically in the complaint are they standing on, and it's Paragraph 23 on Appendix 120. What I heard was that, yes, this allegation is nonspecific, problem number one. What I didn't hear was it's also conclusory. That's problem number two. What my friend on the other side said was that this allegation was not a guess. Well, if it's not a guess, then where are the facts that back up that they actually worked in concert together? Well, what about the court's dismissal of this and her not allowing them to amend? So that was in the first case. And so this appeals from the second case, so I'm going to start in the first case. So by stipulation, it's the record and the resolution from the first case that applies in the second case. In the first case, they requested, they didn't file a motion, that was pointed out by the district court, they requested leave to amend in their opposition brief. And in doing so, they made that request two years after the court deadline to file an amended pleading, or to file a motion to request an amended pleading. And we were also a handful of months away from trial at that point. The district court said that they're well past their deadline, and that ship on amendment has long since sailed because of it. District court also pointed out that the same complaints that we had regarding the sufficiency of their complaint were filed in 2017. They were on notice of our problems with the sufficiency of their complaint. If you compare our first motion and our second motion, they're virtually the same when it comes to 12B6 because the complaint hadn't changed. So they had plenty of time before the court deadline to file an amended pleading. They chose not to.  Only in opposition to the motion that we renewed later in 2020. So the court properly denied them leave to amend. Now, the stipulation that was agreed to by the parties says that the final resolution of the first case applies fully to the second case. So that resolution, by stipulation, applies to the second case. That's what they stipulated to. That's why, in force and effect, they were denied leave to amend in the second case. In resolving the 12B6, it appears that the district court relied on some discovery for venue purposes in making the decision. I respectfully would disagree with that, Your Honor. What we did in our motions, we submitted documents that were integral to the complaint. In other words, an excerpt from the ANDA and the notice letter itself. Those documents were integral to the complaint because they were referred to expressly in the allegations of the complaint. Under Third Circuit law, I believe it's the Burlington Cope case, it says you can do that. A movement under 12B6 is entitled to do that because the plaintiff has notice of those documents because they're specifically referred to in the complaint. So the district court correctly considered those documents in connection with a Rule 12B6 motion. Selgin does not dispute that point. And dismissed the group allegation that Mylan submitted the ANDA. The group allegation being Mylan was a short form for three separate entities. Dismissed that group allegation as to Mylan and B because those documents show that MPI and MPI alone submitted the ANDA. In a theoretical world, I know it might not be possible under what we know under the facts of this case, but what could and should have Selgin done to get over a 12B6 motion with this complaint with respect to Mylan and B? Your Honor, with regard to Mylan and B, there's nothing they could do. And that's because we actually submitted affidavits on this that the court did not consider in connection with the 12B6, but in connection with the venue rather, because it was also a live issue in the venue portion of the motion, that Mylan and B had nothing to do with the preparation of the ANDA, nothing to do with the submission of the ANDA, nothing to do with the eventual future distribution or sale of the ANDA. So there is nothing they could do. But in a hypothetical world where they might have had something to do, what would they have done?  If they had found out evidence that showed the foreign entity had participated in it factually somehow. Strictly speaking, it wouldn't be venue because we're talking about 12B6 here, but some sort of general discovery regarding who did what in connection with the ANDA. And, indeed, that's what the parties did do for three years leading up to our renewed motion. So they had plenty of opportunity to find that evidence, and nothing that they found rebutted the affidavit that we submitted on for the venue portion that said Mylan and B was not connected to the ANDA in terms of its preparation, submission, or any future plans for it. Can I just ask a side question related to the evidence, which is just that there's a lot of stuff marked confidential in the briefs and in the appendix, and it's not intuitively obvious to me why some of that stuff is confidential. And that includes some of it's about Mylan employees and what they were doing in New Jersey, and there's a lot of other stuff that's very general information about Mylan's corporate structure. Do you know what I'm talking about, Andy? Is that stuff necessarily kind of – I mean, we've got to write an opinion in this case, presumably. Do you adhere to those confidentiality markings here, or are you prepared to disavow them? So with respect to Mylan employees, because we're talking about their residences, we were very concerned about employee confidential information. Their residences are their personal homes, as you can see from the brief, and they have nothing to do with Mylan. Okay, so you're talking about addresses and names of employees. That's correct. So things like some of their webpages from LinkedIn, whatever else, those are all public. We don't have a problem with those. But specific to their residences, we were concerned about that. And if we stepped too far, Your Honor, I apologize for that, but we were just trying to maintain their confidence. And what about Mylan's corporate structure? Mylan's corporate structure, is there a specific reference, Your Honor? No, I don't have one. Okay. I will say, generally, I think the concern is that the information had to do with – a lot of the discovery requests had to do with financial information regarding these entities and how they interrelate to each other. And so we were concerned because none of that stuff is public. And, frankly, the disclosure of financial information that is not public is something that my client is sensitive about. Let me move you to, I think, maybe where you were going, which was the second portion of the discussion here about what acts are related to submission under Valiant and whether the acts that your friend here described were sufficiently related to submission. Sure. And so I believe the only activity that my friend pointed out was the submission – I apologize – the sending of the Paragraph 4 notice letter to Selging. And I want to respond to Judge Chen's question, which had to do with, is it actually part of 271A2? And it's not. A cause of action under 271A2 is complete upon submission of the ANDA. And the other side's argument is you don't have a complete submission of an ANDA until you amend the ANDA with proof of sending the notice letter. So it is required under the Hatch-Waxton statute that you tell the FDA that you complied with the statute by sending notice. It is not part of 271A2. And the example I'll raise is that when you send a notice letter to the brand, before they sue you, they don't ask you, oh, did you let the FDA know about the notice letter? And that's because the cause of action for infringement under 271A2 is complete upon the submission of the ANDA. Whatever is sent regarding the notice letter confirmation, whatever else, that's not part of a complete act of infringement. As Your Honor pointed out, it is the submission. It's electronically submitted, so when the button is pushed, that is the act of infringement. But the ANDA applicant has to amend the application under FDA's rules to include proof of sending the notification letter. Confirmation must be provided to the FDA regarding the sending of the notice letter. Yeah, through an amendment of the submission. Which then raises a question of, well, then when is the submission truly complete? We know the requirement, apparently, is to do this kind of amendment. So is that amendment part of the submission, or does it come completely after the submission? That's really the question I'm trying to figure out. In the context of 271A2, it comes, in terms of the timeline, it's after the submission. It is something that occurs after the submission. Because why? If the FDA rules require the ANDA applicant to amend its ANDA application. Because the cause of action of infringement is complete upon submission of that original ANDA. We can be sued immediately, right then and there. There's no need for this extra step of, please let us know that you confirmed the FDA that the notice letter was received. And another point on... I thought their time for filing a suit is triggered upon receipt of the notification letter. Of the notification letter, not of the submission of the paperwork to the FDA regarding confirmation that the notice letter was sent. And a point on the notice letter, the theory here is that the sending of a notice letter to an address in New Jersey somehow makes New Jersey relevant to the submission itself. We think that turns 1400B on its head. Because what they're saying is that an office building operated by the plaintiff is relevant to the venue statute. But the venue statute is quite specific. It's focused on defendants and defendants only, their place of incorporation, where they committed acts of infringement, where they have regular established places of business. It is not focused on the plaintiff at all. So this argument is legally incorrect because it reads language into the statute that's not there, or it broadly construes that language, which is not consistent with Supreme Court instruction, that the venue statute is to be narrowly construed. Unless there are any further questions, I will see the remainder of my time. Thank you. Thank you. Ms. Thompson? We'll restore three minutes, everybody. Ms. Thompson? I'll start with the amendment of the claim as to Milan NV. And first, I want to say that my friend on the other side was incorrect, that the trial was imminent. On appendix page 48, the district... I'm sorry, I didn't hear. Your friend was correct, that was? Incorrect, that trial was imminent. On page 48 of the appendix, the court denies Seldene's opposition argument that the improper venue motion was forfeited because it wasn't brought in a timely manner. And it does so in part because it says no trial is imminent. It's incongruous to say this motion for improper venue isn't too late, but it's too late to amend a complaint as to Milan NV, which the court won't address until we address the improper venue motion. But I would also just point out that under the abuse of discretion standard, since this court applies third circuit law, the court should look to Alvin v. Suzuki, which is 839F3242. It's a 2016 decision. It says that denial of a leave to amend based on the relevance of case management order is an abuse of discretion. That's what happened here. That's the reason that the motion for leave to amend was denied, and that's an abuse of discretion. Finally, while we think that the arguments related to the 12D summary judgment motion are entirely improper, I did want to pick up on your questions, Judge Probst, concerning the information under seal and the length of discovery, of venue discovery. If the court would look to pages 2401 to 2405 of the appendix, they will see that it took two years nearly for Milan to reveal its corporate structure and the overlap between officers and directors. And as the court pointed out, that information is under seal now. And while that's not relevant to assessing a Rule 12b6 motion, I do think that it's relevant to this court's consideration of what additional facts Selgin could have pleaded at the time it filed the complaint, because all of that information about the interactions between the Milan entities, Milan keeps very closely guarded. I will turn very briefly to the act of infringement. One, in deciding the act of infringement that occurred here, that's under the Hatch-Waxman Act. And so there's no constraint to narrowly construe the Hatch-Waxman Act. The act of infringement should really comport with the purpose of the Hatch-Waxman Act. This court in Valiant said that acts of infringement are those sufficiently related to the ANDA submission, so it's not when was the button pressed to submit, but what is sufficiently related to that submission. And here are the notice letters sent to Selgin in New Jersey. It's sufficiently related to the ANDA submission. Thank you. We thank both sides, and the case is submitted. That concludes our proceeding for this morning. Thank you. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.